UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **RACHAD AHMAD REFAAT EL BADRAWI,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Civil No. 07CV372 (JCH)** |
| | ) |
| **DEPARTMENT OF HOMELAND** | ) |
| **SECURITY, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**DECLARATION OF SHARI SUZUKI**

I, SHARI SUZUKI, pursuant to 28 U.S.C. § 1746, declare the following to be true and correct:

1.    I am the Chief of the Freedom of Information Act Appeals, Policy, and Litigation Branch (FAPLB), Rulings and Disclosure Law Division, Regulations and Rulings, Office of International Trade, United States Customs and Border Protection (CBP), Department of Homeland Security (DHS) in Washington D.C. The FAPLB is the office within DHS/CBP that is charged at all times pertinent to this litigation with the responsibility of managing and responding to administrative appeals of initial responses under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

2.    As the Chief of the FAPLB, I am responsible for the overall supervision and management of the FAPLB, and I serve as the official with the following responsibilities, *inter alia*: 1) giving guidance and instructions to the personnel in CBP regarding the processing of FOIA requests; 2) adjudicating administrative appeals that concern FOIA requests; and, 3) overseeing all CBP activities related to information disclosure. I have held this position since April 2, 2006.

1

3.    I am familiar with Rachad El Badrawi's (hereinafter Plaintiff) request for information from CBP, pursuant to the FOIA. All information contained herein is based upon information furnished to me in my official capacity, and the statements I make in this declaration are based on my personal knowledge, which includes knowledge acquired through, and agency files reviewed in the course of, my official duties.

4.    The purpose of this Declaration is to describe for the Court Defendant's handling of Plaintiff's FOIA request and appeal, and to provide the Court and Plaintiff with a <u>Vaughn</u> Index, identifying information responsive to Plaintiff's FOIA request, but exempt from disclosure under the FOIA, in accordance with <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). *See* Attachment A (identifying the documents redacted and released to Plaintiff). This Declaration and its attachments, along with the <u>Vaughn</u> Index, provide the Court and Plaintiff with an identification of information that is withheld, the statutory exemption(s) claimed, and the justification for asserting the exemptions used to withhold certain information contained in the record at issue.

5.    This Declaration consists of:  (I) a summary of the relevant facts and correspondence regarding Plaintiff's FOIA request and appeal; (II) an explanation of the search for records responsive to Plaintiff's request; (III) an explanation of the notation form used to identify the justification for redacted information; (IV) the justification for withholding information under the FOIA; and (V) a statement regarding the segregability of the documents partially withheld.

## I.    Summary of Relevant Facts and Correspondence Concerning Plaintiff's FOIA Request and Appeal

6.    On October 19, 2006, Mr. Michael J. Wishnie, associated with Yale Law School,

filed a FOIA request on behalf of Plaintiff, seeking "access to and copies of the any records held

by CBP, mentioning or concerning Rachad Ahmad Refaat El Badrawi, including but not limited

to any record found in the Treasury Enforcement Communications System (TECS), National

Automated Immigration Lookout System (NAILS), or Computer Linked Application

Information Management System (CLAIMS) databases." *See* Attachment B. Plaintiff filed his

initial FOIA request with CBP's FAPLB, which is not the appropriate office to process initial

FOIA requests. On October 26, 2006, FAPLB forwarded Plaintiff's request to CBP's Office of

Field Operations (OFO/CBP) for initial processing and a direct response to the requestor.

7.    In performing its search, OFO/CBP located eight (8) TECS records, but

determined these records belonged to other agencies. On December 9, 2006, OFO/CBP issued

its response to Plaintiff's initial FOIA request, notifying the Plaintiff that CBP has been unable to

locate any records in the CBP database within the releasing authority of CBP. *See* Attachment

C.

8.    On December 20, 2006, Plaintiff appealed CBP's response. *See* Attachment D.

Due to administrative error, CBP's FAPLB office misplaced this appeal. On March 9, 2007,

Plaintiff commenced his FOIA lawsuit. CBP's FAPLB office located Plaintiff's administrative

appeal and began processing it on March 21, 2007. On July 9, 2007, CBP responded to

Plaintiff's administrative appeal. *See* Attachment E.

9.    In its response to Plaintiff's administrative appeal, FAPLB reversed CBP's initial

decision to withhold one (1) record from the TECS system, determining this record was a

responsive CBP record. FAPLB provided Plaintiff a copy of the TECS record with certain

information withheld pursuant to Exemptions (b)(2), (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E) of the

3

FOIA. Further, at that time, FAPLB determined that all other records responsive to Plaintiff's request were not CBP records. In other words, although the records were maintained in TECS, a CBP system of records, the records originated with other federal agencies.[1] Consequently, those records were referred to other agency(ies) for a direct response to the requestor. Specifically, two (2) records were referred to the Department of State (DOS), and three (3) records were referred to U.S. Immigration and Customs Enforcement (ICE). CBP referred these records because the information contained in the records had been input by DOS and ICE, *i.e.* these records originated with DOS and ICE, and, consequently, these agencies were best able to determine whether to release all or part of the records.

10.     On June 25, 2007, DOS responded to Plaintiff regarding the two (2) TECS records that CBP referred to DOS. *See* Attachment F. On December 6, 2007, ICE responded to a FOIA request made by Plaintiff. This response included the three (3) TECS records that CBP referred to ICE. *See* Attachment G.

11.     On December 18, 2007, FAPLB issued a supplemental response to Plaintiff's appeal, disclosing two (2) additional TECS records, with certain information withheld pursuant to FOIA Exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(E). *See* Attachment H. These records were located by CBP during its initial search but were deemed to belong to another agency and as such were not initially released by CBP. However, in the process of preparing for this case, FAPLB determined that these records are CBP records. Therefore, a supplemental disclosure

---

[1] TECS is the principal information system supporting the border management and law enforcement mission of the U.S. Customs and Border Protection and other federal law enforcement agencies. TECS is a computer based telecommunications system containing information pertaining to individuals, businesses, vehicles, and aircraft and is comprised of many automated systems that serve to support the mission of DHS and CBP to protect the borders (air, land, and sea) of the United States. TECS is maintained by CBP; however, TECS permits other law enforcement agencies to input information into the system, *i.e.* create their own records in the system, as well as access records from the system. The information in the database is used to support law enforcement by sharing data of common interest.

was made.

## II.    Explanation of the Search for Records Responsive to Plaintiff's Request

12.    On December 9, 2007, based on the information provided by Plaintiff, a search for records was conducted by the OFO/CBP. CBP's search for responsive documents was adequate, thus satisfying the requirements of the FOIA, because CBP engaged in a good faith effort to conduct a search for the requested records, using methods which were reasonably expected to produce the information requested.

13.    CBP's record search in response to Plaintiff's request comprised of searching records retained in the TECS system, a computer based telecommunications system containing investigative and law enforcement information pertaining to individuals, business, conveyances, and the importation and exportation of merchandise. TECS is the principal information system supporting the border management and law enforcement mission of CBP and is the sole interface to the CBP records concerning the interaction of the CBP officers with persons entering the United States. Further, it is the only database that would reasonably contain the information requested in this FOIA request.

14.    TECS records include but are not limited to records pertaining to known violators, wanted persons, lookouts (temporary and permanent), reference information, regulatory and compliance data. Information about individuals includes but is not limited to name, alias, date of birth, address, physical description, various identification numbers, details and circumstances of a search, arrest, or seizure, case information such as merchandise, and values, methods of theft, etc. *See* System of Records Notice, 66 F.R. 53029 (Oct. 18, 2001). Thus, TECS is an overarching law enforcement information collection, risk assessment, and information sharing

environment.  It is also a repository for law enforcement and investigative information.  Any and all information created by CBP regarding Plaintiff would be maintained in TECS.

15.    There are no other CBP records from NAILS or CLAIMS databases.  In January 2005, all data that was contained in NAILS database was merged into TECS, and NAILS ceased to exist.  Thus, there are no NAILS records responsive to Plaintiff's request.  CLAIMS database is maintained by U.S. Citizenship and Immigration Services (USCIS); it is not a CBP system of records.  CBP has no access to search CLAIMS database; therefore, that database was not searched.

16.    With regard to the FOIA request made by the Plaintiff, a query of TECS was made and the search resulted in eight (8) responsive records.  Out of these eight (8) records: three (3) were CBP records,[2] two (2) were DOS records, and three (3) were ICE records.  CBP made appropriate referrals of DOS and ICE records.

17.    Each responsive CBP document was reviewed to determine whether it could be disclosed in its entirety, disclosed with redaction, or withheld in its entirety.  If information in the document was exempt, the appropriate exemption was marked on the face of the document.  Each line of a document was reviewed to determine if the document could be released with redactions, and the appropriate redactions were made under each Exemption, with the Exemption(s) noted on the document next to the redacted material.  Specifically, for one (1) record where Exemption (b)(3) was asserted, the material was reviewed to ensure that withholding of information prohibited from disclosure was pursuant to the statute that requires the matters be withheld from the public in such a manner as to leave no discretion on the issue or

_____

[2] Please note that in response to Plaintiff's appeal, FAPLB initially released one (1) CBP record.  Further evaluation of the responsive records showed that two (2) more records were CBP records.  Thus, as stated previously in this declaration, on December 18, 2007, CBP supplemented its response on appeal and released two (2) additional records to Plaintiff.

establishes particular criteria for withholding or refers to particular types of matters to be withheld.

## III.    Explanation of the Notation Form Used to Identify the Justification for Redacted Information

18.    The copies of the documents contain, on their face, coded categories of FOIA exemptions which detail the nature of the information withheld.  For example, if "b2" appears on a document, this refers to Exemption (b)(2) of the FOIA, which concerns matters related solely to the internal personnel rules and practices of an agency.  The narrative description of withheld documents, as provided in this declaration and the attached index of documents, is unique to each document described.  This description is intended to provide the Court and Plaintiff with a general understanding of the document or material withheld without being so detailed as to specifically identify, and hence release, the material sought to be protected.

## IV.    Justification for Redacted Materials

### A.    5 U.S.C. 552(b)(2): Records Related Solely to the Internal Personnel Rules and Practices of an Agency

19.    Exemption (b)(2) (5 U.S.C. § 552(b)(2)) exempts from mandatory disclosure matters that are ". . . related solely to the internal personnel rules and practices of an agency." Material may be withheld under this exemption if:  (1) it relates predominantly to an agency's internal "rules and practices" for personnel; and (2) the public has no genuine or legitimate interest in the requested information.  Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Exemption (b)(2) encompasses two distinct categories of information:  (1) internal matters of a relatively trivial nature, often referred to as "low 2" information; and (2) more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement, often

7

referred to as "high 2" information. *See* Schiller at 1207.

20.    Examples of information properly withheld under Exemption (b)(2) "low 2" include computer codes, data processing codes, and file numbers. *See* Scherer v. Kelley, 584 F.2d 170, 175-76 (7th Cir. 1978); Changzhou Laosan Group v. U.S. Customs and Border Protection, No. 04-1919, 2005 WL 913268, at 3 (D.D.C. Apr. 20, 2005). Information in the second category, classified as "high 2," includes more substantive internal matters pertaining to CBP law enforcement guidelines and techniques. The withholdings in this case concern both "low 2" and "high 2" information.

21.    Information withheld pursuant to Exemption (b)(2) "low 2" consists of case and file numbers, administrative markings (*e.g.,* data processing and computer codes, key strokes, and function codes of internal agency computerized property management systems) relating to internal agency file control systems, and internal agency administrative processes' status queries.

22.    Case and file numbers, and administrative markings are purely internal and are utilized by CBP to assist in the management and control of its mission. Case and file numbers and other administrative markings are used for the purposes of indexing, storing, locating, retrieving, and distributing information in the law enforcement records of CBP. As access to the file and computer systems is restricted from the public, the public has little or no interest in this information or the file markings and computer codes. Moreover, the information withheld under "low 2" does not impact, in any substantive manner, upon Plaintiff.

23.    In addition, knowledge of internal agency computer system report types and associated computer function codes could facilitate improper access to sensitive CBP records. The disclosure of this information in the hands of a "computer hacker," for example, could

jeopardize the integrity of TECS.

24.     Information withheld pursuant to Exemption (b)(2) "high 2" pertains to the information of more substantial nature which serves to identify the particular law enforcement methods, strategies, and tactics for CBP employees to follow with respect to their official law enforcement duties.  Redactions made that constitute "high 2"s are the "primary," "status," and "remarks" fields of the three (3) records.[3]  The release of this information would disclose CBP's detention and other law enforcement procedures that are conducted at airports. The release of this information may benefit those attempting to violate the law and avoid detection by CBP.

25.     Knowledge of the information withheld under Exemption (b)(2) "low 2" as well as the information identifying certain law enforcement methods ("high 2" information) would increase the risk of circumvention of the law and regulations, compromise the electronic records system, impede effectiveness of law enforcement activities, and endanger CBP investigatory practices and techniques.  At the same time, while serving important functions, as noted above, the information is predominantly internal and is not of significant public interest to outweigh the interests the agency seeks to protect.

26.     As identified in the Vaughn Index (Attachment A), Exemption (b)(2) was applied to the following pages that were redacted and released to Plaintiff:  1, 2, 3.

**B.       5 U.S.C. 552(b)(3): Records that Are Specifically Exempted from Disclosure by Statute**

27.     Exemption (b)(3) (5 U.S.C. § 552(b)(3)) exempts from mandatory disclosure "records that are specifically exempted from disclosure by statute provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion

---

[3] All other redactions made pursuant to Exemption (b)(2) constitute "low 2"s.

on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."

     28.    In this case, information in the "REF" section of TECS record #1 partially disclosed to Plaintiff belongs to the Department of State (DOS). Between approximately April 24, 2007 and June 25, 2007, CBP consulted with DOS regarding information in the "REF" section because (1) DOS was better able to determine whether this information was exempt from disclosure and (2) DOS has a substantial interest in the determination with regard to this information. The FOIA explicitly permits consultation with another agency having a substantial interest in the determination of the request. 5 U.S.C. § 552(a)(6)(B)(iii)(III); *see also* Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1118 (D.C. Cir. 2007). After consultation with DOS, CBP exempted such information from disclosure in its entirety pursuant to Section 222(f) of the Immigration and Nationality Act (INA), found at 8 U.S.C. § 1202. INA 222(f) specifically states that "the records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other law of the United States." The Courts have held that INA 222(f) sufficiently limits the category of information it covers – records pertaining to the issuance or refusal of visas and permits to enter the United States – to qualify as an Exemption (b)(3) statute under subpart (B). DeLaurentiis v. Haig, 686 F.2d 192, 194 (3rd Cir. 1982). Additionally, INA 222(f) requires the matters pertaining to the issuance or denial of visa be withheld as to leave no discretion on the issue. Perry-Torres v. U.S. Department of State, 404 F.Supp.2d 140, 143-144 (D.D.C. 2005). Thus, INA 222(f) is a withholding statute and the

information contained in TECS record #1 clearly falls within the statute's scope as it refers to the issuance or refusal of visas or permits to enter the United States. This exemption has been applied to withhold the information pertaining to Plaintiff's certificate of revocation issued by the DOS.

29.     As identified in the <u>Vaughn</u> Index (Attachment A), Exemption (b)(3) was applied to the following pages that were redacted and released to Plaintiff:  1.

### C.     5 U.S.C. § 552(b)(6): Personnel and Medical Files And Similar Files The Disclosure Of Which Would Constitute A Clearly Unwarranted Invasion Of Personal Privacy

30.     Exemption (b)(6) (5 U.S.C. § 552(b)(6)) exempts from disclosure personnel and medical files and similar files the release of which would constitute a clearly unwarranted invasion of personal privacy. This protection is afforded to information that would infringe on the personal privacy of individuals about whom it pertains. The United States Supreme Court in <u>United States v. Washington Post Co.</u>, 456 U.S. 595 (1982) stated in reliance on legislative history of the FOIA that the phrase "personnel and medical and similar files" was to be broadly interpreted. Once the threshold requirement is met, Exemption (b)(6) requires a balancing of the public's right to know against an individual's right to privacy to determine whether disclosure of the records at issue would constitute a clearly unwarranted invasion of a person's privacy. <u>Dep't of the Air Force v. Rose</u>, 425 U.S. 352 (1976). It must be ascertained whether a protectible privacy interest exists that would be threatened by disclosure.

31.     In this case, the CBP employees' right to have his or her name and other identifying information withheld from disclosure outweighs the public's interest in knowing this information. The privacy consideration is to protect CBP personnel as individuals from

unnecessary, unofficial questioning and harassment as to the conduct of their duties whether or not they are currently employed by CBP. Further, disclosing the information redacted from documents in this case, *i.e.,* names and other personal identifying information, does not shed light on how CBP performs its statutory duties. Thus, Exemption (b)(6) has been applied to withhold the names, the telephone numbers, and other markings identifying CBP officers.

32.    Pursuant to Exemption (b)(6), CBP has withheld the names and contact information of its personnel – owners of TECS records disclosed to Plaintiff with redactions. This information was withheld from the following pages redacted and released to Plaintiff: 1, 2, 3.

### D.    5 U.S.C. § 552(b)(7)(C): Records and Information Compiled For Law Enforcement Purposes that Could Reasonably Be Expected to Constitute an Unwarranted Invasion of Personal Privacy

33.    In addition to Exemption (b)(6), the names and contact information of CBP employees are withheld under Exemption (b)(7)(C). Exemption (b)(7)(C) exempts from disclosure "records and information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption (b)(7) applies to civil, criminal, and administrative law enforcement proceedings, and protects, among other information, the identity of law enforcement personnel and third parties referenced in files compiled for law enforcement purposes. Exemption (b)(7)(C) was asserted to protect the identities and contact information of CBP employees responsible for creating the records in question and conducting the law enforcement activities. The primary consideration is to protect CBP employees as individuals from unnecessary, unofficial questioning and harassment as to the conduct of their duties.

12

34.    The TECS records, containing the names and contact information of CBP personnel and disclosed to Plaintiff in response to its request, meet the requirement for being compiled for law enforcement purposes. CBP is a law enforcement agency with enforcement responsibilities for over 400 federal statutes. Therefore, many of the files created and maintained by CBP are directly related to law enforcement operations.

35.    CBP's mission is to protect the borders of the Unites States against terrorists and the instruments of terror, enforcing the customs and immigration laws of the United States, and fostering our Nation's economy through lawful international trade and travel. Its mission includes the processing of passengers, conveyances, and merchandise entering into the United States, thwarting the operations of terrorist organizations by detecting, disrupting and preventing the cross-border travel of terrorists, terrorist funding, and terrorist implements. The creation and implementation of effective law enforcement systems and procedures is paramount to achieving this mission. TECS system of records is a law enforcement system that maintains every possible type of information from a variety of federal, state, and local sources which contributes to and supports CBP's law enforcement mission to protect the borders. Given the nature of Plaintiff's request and the description of the TECS system of records, three (3) pages of responsive records are law enforcement records because such records are compiled in direct relation to CBP's law enforcement mandate to protect the U.S. borders. Further, the individuals whose privacy would be subject to invasion are identified in the records, and the invasion of that privacy is unwarranted. There is no public interest to be served by placing the identities and contact information of CBP employees before the public.

36.    Pursuant to Exemption (b)(7)(C), CBP has withheld the names and contact

information of its personnel.  This information was withheld from the following pages redacted and released to the Plaintiff:  1, 2, 3.

> **E.      5 U.S.C. § 552(b)(7)(E): Records and Information Compiled For Law Enforcement Purposes But Only To The Extent That The Production Of Such Records Or Information Would Disclose Techniques and Procedures For Law Enforcement Investigations Or Prosecutions Or Procedures Or Would Disclose Guidelines For Law Enforcement Investigations Or Prosecutions If Such Disclosure Could Reasonably be Expected To Risk Circumvention Of The Law**

37.     Exemption (b)(7)(E) authorizes the withholding of records and information that consist of or reveal a law enforcement "technique" or "procedure" when that technique or procedure is employed  in law enforcement investigations.  *See* Nowak v. IRS, 2000 U.S. App. LEXIS 948 (9th Cir. 2000).  Information that has a law enforcement purpose where disclosure would risk circumvention of law and agency regulations and redacted pursuant to Exemption (b)(2) was also withheld under Exemption (b)(7)(E).  Disclosure of the information in this matter would disseminate techniques or procedures used in law enforcement investigations and detection of violators, and it is reasonably foreseeable that disclosure would risk circumvention of the law by disclosing administrative procedures, steps/guidelines to follow, in regard to the operational responsibilities discussed and assigned to CBP personnel, and by handling the information in an operational context by the CBP enforcement officers.

38.     The release of information redacted from the "primary," "status," and "remarks" fields would disclose CBP's detention and other law enforcement procedures that are conducted at airports and may benefit those attempting to violate the law and avoid detection by CBP.

39.     Pursuant to Exemption (b)(7)(E), the information was withheld from the following pages redacted and released to the Plaintiff:  1, 2, 3.

14

## V.    **Segregability**

40.    Under the FOIA, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions, which are exempt." 5 U.S.C. § 552(b). All information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions promptly released. Each document partially released was reviewed to determine if there were any portions of the document that could be released. Information withheld as indicated in the attached Vaughn Index was individually determined to be exempt from release; however, the segragable portions were released to the Plaintiff.

41.    I declare under penalty of perjury, that the matters and facts set forth in this Declaration fall within my official purview and, based upon my personal knowledge, information, and belief, are correct and true.

Executed this ___3rd___ day of January, 2008.

Shari Suzuki, Chief
FOIA Appeal, Policy, and Litigation Branch
Regulation and Disclosure Law Division
Office of International Trade; Regulations and Rulings
U.S. Customs and Border Protection
Washington, D.C. 20229

15