UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RASHAD AHMAD REFAAT EL BADRAWI : | |
|     Plaintiff, : | |
| : | CIVIL ACTION NO. |
| v. : | 3:07-cv-372 (JCH) |
| : | |
| DEPARTMENT OF HOMELAND : | |
| SECURITY, ET AL., : | JANUARY 13, 2009 |
|     Defendants. : | |

**RULING RE: IN CAMERA REVIEW**

**I.    INTRODUCTION**

This action is brought under the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552.  Plaintiff, Rashad Ahmad Refaat El Badrawi, seeks declaratory and injunctive relief to compel disclosure of records held by the defendants, the Department of Homeland Security ("DHS"), the Department of State ("DOS"), and the Department of Justice ("DOJ").

On October 19, 2006, El Badrawi submitted FOIA requests to three component agencies of DHS – Customs and Border Protection ("CBP"), Citizenship and Immigration Services ("CIS"), and Immigration and Customs Enforcement ("ICE") – as well as DOS, and the Federal Bureau of Investigation ("FBI") (a component of DOJ).[1] Over the course of the following two years, the five agencies, CBP, DOS, FBI, ICE, and CIS, have responded to El Badrawi's FOIA requests with a protracted series of letters, agency declarations, and document disclosures.  Unsatisfied with the defendants' initial response, El Badrawi filed the present action in March 2007.

---

[1] In October 2006, El Badrawi submitted a FOIA request to the Employment and Training Administration ("ETA"), a component of the Department of Labor, and ETA was originally a party to this lawsuit.  In November 2007, however, El Badrawi dropped his claim against ETA.

Between January and March 2008, each agency filed a Motion for Summary Judgment, see Doc. Nos. 15, 20, 25, 39, and 57, seeking summary judgment with respect to: 1) the adequacy of the agencies' searches for records responsive to El Badrawi's FOIA requests; 2) the reasonableness of the referral of certain responsive documents to their originating agencies for direct review and response; 3) the propriety of the withholding of certain responsive records and the propriety of the exemptions invoked to justify those withholdings; and 4) the reasonableness of the agencies' segregability determinations for responsive documents released to El Badrawi in redacted form.

In a September 30, 2008 Ruling on Defendant's Motions for Summary Judgment (Doc. No. 109) (the "September 30 Ruling"), the court granted in part and denied in part the Motions for Summary Judgment. With respect to the propriety of the withholding of certain responsive records from El Badrawi, the court held, inter alia, that the agencies had not submitted Vaughn indices[2] sufficient to allow the court to conduct the requisite de novo review. See 5 U.S.C. § 552(a)(4)(B); see also, Halpern v. FBI, 181 F.3d 279, 288 (2d Cir. 1999); Massey v. FBI, 3 F.3d 620, 622 (2d Cir. 1993). Consequently, the court ordered the agencies to submit to the court all contested documents withheld from El Badrawi, in full or in part, for the court's in camera review.

The court has now completed a careful review of all the materials at issue in this

---

[2] [W]hen an agency seeks to withhold information, it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Morley v. CIA, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (internal quotations omitted). This justification typically takes the form of a Vaughn index, named for the case that introduced it. See Vaughn v. Rosen, 484 F.2d 820, 820 (D.C. Cir. 1973) ("an agency's response to a FOIA request must include an index of all material withheld in whole or in part").

case, including all contested documents withheld from El Badrawi, numerous agency declarations and Vaughn affidavits justifying the withholdings, and El Badrawi's objections to the withholdings.  This ruling addresses the propriety of the agencies' decisions to withhold records from El Badrawi, as well as a number of corollary issues raised by the parties during the course of this dispute.

## II.     STANDARD OF REVIEW

The Freedom of Information Act is "broadly conceived to reflect a general philosophy of full agency disclosure." ACLU v. DOD, 543 F.3d 59, 66 (2d Cir. 2008) (internal quotations omitted).  In other words, "[the Act] adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies." Halpern v. FBI, 181 F.3d 279, 286 (2d Cir. 1999).  It "was enacted to promote honest and open government and to assure the existence of an informed citizenry . . . ." Grand Cent. P'ship., Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999).

In keeping with this policy of disclosure, the Act confers jurisdiction on district courts to enjoin federal agencies from withholding agency records, and to order the production of any agency records improperly withheld.  See 5 U.S.C. § 552(a)(4)(B). Under this provision, however, ". . . jurisdiction is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'  Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." United States DOJ v. Tax Analysts, 492 U.S. 136, 142 (1989) (internal quotations omitted).

In the present case, the latter two criteria are uncontested.  It is clear that the documents in question are agency records and that they are being withheld by the

defendants. The only question for this court is whether those records are being "improperly" withheld.

In enacting the FOIA, Congress intended to "close the loopholes which allow agencies to deny legitimate information to the public." Gte Sylvania v. Consumers Union of United States, 445 U.S. 375, 385 (1980) (internal quotation omitted). To achieve this goal, Congress created a number of clearly defined exemptions to the Act's otherwise mandatory disclosure requirement. Thus, under FOIA, "an agency must disclose agency records to any person under § 552(a), unless [the records] may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b)." Tax Analysts, 492 U.S. at 150-151 (1989) (quoting Department of Justice v. Julian, 486 U.S. 1, 8 (1988)). Further, as the Supreme Court has noted, the exemptions are "explicitly exclusive." Tax Analysts, 492 U.S. at 150-151 (1989). Consequently, it follows that, "agency records which do not fall within one of the exemptions are 'improperly' withheld." Id. Thus, the court must address whether the records withheld from El Badrawi by the agencies fall within one of the nine statutory FOIA exemptions.

### III.   AGENCY WITHHOLDINGS AND THE PROPRIETY OF FOIA EXEMPTIONS

As discussed in detail in the September 30 Ruling[3], the defendants have withheld responsive records from El Badrawi under a number of the nine statutory exemptions to FOIA's general rule of disclosure. See 5 U.S.C. § 552(b). El Badrawi has conceded that certain information was properly withheld – namely, information withheld under

---

[3]Because the September 30 Ruling described, in detail, the substance of the various FOIA exemptions invoked in this case, the court assumes familiarity with these statutory exemptions. Consequently, the previous Ruling's lengthy descriptions of the exemptions will not reproduced here, but rather are incorporated by reference.

4

Exemptions "low 2," 6, and 7(C) – but vigorously objects to the withholding of information under other exemptions.[4]  Therefore, the court now addresses the propriety of the agencies' applications of the exemptions in question.  Before turning to the exemptions, however, it may be helpful to describe the possible outcomes of the court's analysis of any given record.

In the discussion that follows, after assessing whether a responsive record has been properly withheld, the court takes one of three positions regarding that record.  First, the court may find that information contained in the record was improperly withheld.  If the court so finds, the court will order that the withholding agency disclose the improperly withheld information within seven days.[5]  Second, the court may find that all information in the record was properly withheld, but that the withholding agency has not submitted an adequate declaration or Vaughn index for that record.  Here, the court will order the withholding agency to submit a supplemental declaration or index that addresses the deficiencies of its previous filings.[6]  Finally, the court may find that both

---

[4]The FOIA exemptions, 5 U.S.C. § 552(b), will be referred to by their subpart number.  For example, the exemption for information relating to agency files which would constitute a clearly unwarranted invasion of personal privacy if disclosed, found in 5 U.S.C. § 552(b)(6), is referred to as "Exemption 6."

[5]During the course of its in camera review, whenever the court found information that was improperly withheld, the court indicated such information by highlighting, in yellow or pink, on the hard copy of the record provided by the agency.  The court will turn over to defendants' counsel the highlighted records, and the agencies are ordered to disclose the highlighted information within seven days.

[6]Courts have consistently held that, when a District Court determines that in camera review is necessary to resolve a FOIA dispute, the court should attempt to create as complete a public record as is possible.  See, e.g., Phillippi v. CIA, 178 U.S. App. D.C. 243 (D.C. Cir. 1976).  In the present case, while the court could have attempted to create this record by ordering the agencies to submit supplemental declarations and Vaughn affidavits prior to in camera review, due to a pattern of delay and inadequate response on the part of the agencies, the court concluded that moving directly to in camera review was the most appropriate way to ensure the plaintiff received the information to which he is statutorily entitled.  This does not, however, relieve the court of its obligation to create as complete a public record as is possible.  Consequently, the court concludes that, in this case, it is both necessary and proper to require

the withholding was proper and that the agency submitted an adequate Vaughn index, in which case the agency has satisfied its statutory obligations with respect to the record in question.[7]

1.  CBP

CBP withheld documents under five FOIA exemptions: Exemptions 2 ("low 2" and "high 2"), 3, 6, 7(C), and 7(E).  El Badrawi does not contest the propriety of the withholdings under Exemptions "low 2," 6, and 7(C).  Thus, only the withholdings under Exemptions "high 2," 3, and 7(E) are at issue.

Following the September 30 Ruling, the court reviewed, in camera, all documents withheld by CBP containing contested exemptions, all previous declarations, and Vaughn indices submitted by CBP, and a sealed supplemental declaration from Shari Suzuki, Chief of CBP's FOIA Appeals, Policy, and Litigation Branch, addressing the propriety of withholding certain information from those documents under Exemptions "high 2" and 7(E) (Doc. No. 118).

After reviewing the CBP materials, the court finds that CBP's withholdings under Exemptions "high 2" and 7(E) are proper.  The information withheld under Exemption "high 2" involves CBP personnel rules and practices that are of no public interest and that would risk circumvention of the law if disclosed.  Information withheld under Exemption 7(E) concerns techniques and procedures for law enforcement

---

that the agencies make post-in camera-review supplemental filings in order to complete the public record.

[7] In the September 30 Ruling, the court concluded that no declarations or Vaughn indices submitted up to that point were adequate.  Since that Ruling, however, ICE (Doc. No. 110), the FBI (Doc. Nos. 117, 126, 127, 128), DOS (Doc. No. 124), and CBP (Docs. No. 118, 125) have each filed supplemental declarations addressing their responses to El Badrawi's FOIA requests.

investigations or prosecutions, or guidelines for law enforcement investigations or prosecutions, and disclosure of such information could reasonably be expected to risk circumvention of the law for the reasons set forth in the most recent Suzuki declaration.

CBP has, to the extent possible, redacted the sealed Suzuki Declaration and made it available to El Badrawi (Doc No. 125). This Declaration meets the Second Circuit's "reasonable specificity" standard, and therefore satisfies CBP's obligation to El Badrawi with respect to information withheld under Exemptions "high 2" and 7(E). Grand Cent. P'ship., Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999).

Concerning CBP's withholding of information under Exemption 3, the court finds that the information withheld concerned a visa revocation rather than the issuance or refusal of a visa, and therefore CBP's invocation of Exemption 3 was improper for the reasons stated in the September 30 Ruling. See September 30 Ruling at 37-39. Consequently, CBP shall disclose to El Badrawi, within seven days, information withheld from Document 1 as indicated[8] by the court.

2. DOS

DOS withheld information from responsive documents pursuant to Exemptions 1 and 3.[9] These exemptions will be addressed separately.

Exemption 1 creates a FOIA exemption for any information properly classified in

---

[8] See process described in footnote 5, supra.

[9] On September 24, 2008, DOS filed a Motion for Reconsideration in an attempt to file a Third Declaration of Margaret Grafeld (Doc. No. 105). In the Third Declaration, Grafeld invokes, for the first time, Exemptions 2, 5, 6, and 7(C) as reasons for withholding certain information from the documents DOS originally withheld only under Exemption 3. These additional Exemptions will not be addressed here, however, because the court denied the Motion for Reconsideration and declined to consider the untimely Third Declaration. See Ruling on Defendants' Motion for Reconsideration (Doc. No. 107).

the interest of national defense or foreign policy. See 5 U.S.C. §552(b)(1). Therefore, in order to determine whether the material withheld by DOS under Exemption 1 was properly withheld, the court must determine whether the records in question were properly classified. To assist with this analysis, Exemption 1 authorizes courts to initiate, where appropriate, "in camera examinations of contested records to determine whether they [have] been properly classified." ACLU v. DOD, 543 F.3d 59, 77 (2d Cir. 2008). Consequently, the court reviewed, in camera, all classified records withheld by DOS.

DOS relies on Executive Order 12958, as amended, 65 Fed. Reg. 15,315 ("E.O. 12958"), as the relevant executive order establishing the criteria for classification. For information to be properly classified under E.O. 12958, it must meet the following requirements:

> a) an original classification authority classif[ed] the information;
> b) the information is owned by, produced by or for, or is under the control of the United States Government;
> c) the information falls within one or more of the categories of information listed in § 1.4 of E.O. 12958; and
> d) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

E.O. 12958 §1.1(a).

The information classified by the DOS in this case is marked at the "Secret" level because the classifying authority has determined that unauthorized disclosure of this information could reasonably be expected to cause serious damage to national security. See E.O. 12958 § 1.2(a)(2); see also First Declaration of Margaret Grafeld, attachment

1 to Doc. No. 22 ("First Grafeld Decl.") at 28.  Further, DOS contends that the information is properly classified under categories (b), (c), and (d) of Section 1.4 of E.O. 12958, which concerns: (b) foreign government information; (c) intelligence activities (including special activities), intelligence sources and methods, and cryptology; and (d) foreign relations or foreign activities of the United States, including confidential sources.

After reviewing all documents withheld by DOS under Exemption 1 – including the two documents referred by DOS to an unnamed government agency, see Doc. No. 89 – as well as a declaration from DOS regarding those two referred documents, the court has concluded that the information withheld by DOS under Exemption 1 does, in fact, concern: 1) foreign government information; 2) intelligence activities (including special activities), intelligence sources and methods, and cryptology; or 3) foreign relations or foreign activities of the United States, including confidential sources. Consequently, this information was properly classified under E.O. 12958, and thus properly withheld from El Badrawi under Exemption 1.

Concerning Exemption 3, as discussed in the September 30 Ruling, DOS invoked Exemption 3 to withhold records in reliance on the same statute upon which CBP relied, namely, § 222(f) of the INA, codified at 8 U.S.C. § 1202(f).  Specifically, DOS relied on Exemption 3 to withhold documents relating to visa revocation, as well as documents relating to the issuance or refusal of a visa.  See First Grafeld Decl. at 29.

DOS's reliance on Exemption 3 to withhold documents relating to visa revocation was improper for the reasons stated in the September 30 Ruling.  See September 30 Ruling at 37-39.  Consequently, DOS shall release to El Badrawi the information withheld from documents relating solely to visa revocation, namely Documents B6, E3,

V8, E5, V7, and C2, as indicated[10] by the court.  With regard to the remainder of the documents withheld under Exemption 3, following an in camera review, the court concludes that those documents do, in fact, pertain to the issuance or refusal of a visa, and therefore those documents were properly withheld under Exemption 3.  DOS explained why these documents fall under Exemption 3 in the First and Fourth Declarations of Margaret Grafeld.  See First Grafeld Decl. at 22-34; Fourth Grafeld Decl. at 2-8.  Together, these declarations meet the Second Circuit's "reasonable specificity" standard, and therefore satisfy DOS's obligation to El Badrawi with respect to information properly withheld under Exemption 3.  Grand Cent. P'ship., Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999).

As discussed in the September 30 Ruling, however, the declarations and Vaughn affidavits submitted by DOS in support of its withholdings under Exemption 1 are not sufficient.  See September 30 Ruling at 44.  For material withheld under Exemption 1, DOS has not provided El Badrawi with "detailed and specific information demonstrating both why the material has been kept secret and why such secrecy is allowed by the terms of an existing executive order."  N.Y. Times Co. v. United States DOD, 499 F. Supp. 2d 501, 510 (S.D.N.Y. 2007) (citation omitted).  Thus, DOS shall submit, within 21 days, a supplemental Vaughn index that addresses the deficiencies noted in the September 30 Ruling at 44.  Alternatively, DOS may file a declaration affirming that no further detail can be provided to the plaintiff without unacceptably compromising the withheld information.

---

[10] See process described in footnote 5, supra.

3. FBI

As indicated in the September 30 Ruling, there are two separate issues concerning the FBI's reply to El Badrawi's FOIA request that must be addressed: 1) the FBI's Glomar response as to the existence or non-existence of responsive NCIC records; and 2) the FBI's response as to the non-NCIC records.[11]  The issues will be addressed separately.

Concerning the Glomar response, the court previously held that, "[t]he declarations submitted by the FBI [did] not provide the court sufficient evidence to review, de novo, its assertion that the existence of [responsive VGTOF] records is classified and protected from FOIA's general disclosure requirement by Exemptions 2 and 7(E)."  September 30 Ruling at 46.  Subsequent to that ruling, and in response to an order of the court, the FBI submitted, ex parte and in camera, the declaration of Arthur M. Cummings, II, Executive Assistant Director of the FBI's National Security Branch (the "Cummings Decl.").  A redacted version of the Cummings Declaration was made available to El Badrawi on October 14, 2008.  See Doc. No. 117.

In his Declaration, Cummings responds to the court's September 30 Ruling and addresses El Badrawi's arguments that: 1) the fact that El Badrawi is in VGTOF is public knowledge, see Plaintiff's Response to Declaration of Del Greco (Doc. No. 103) at 2; and 2) Exemptions 2 and 7(E) do not apply to VGTOF files because any law enforcement techniques and procedures contained in VGTOF have already been publicly disclosed by the government, see id. at 6.  Specifically, Cummings states that,

---

[11]The full histories of these issues is set forth in the September 30 Ruling at 8-10 and 45-47, and is hereby incorporated by reference.

11

"significant harm to [counterterrorism investigations] would result if the FBI were required to confirm whether particular individuals were listed or not listed in VGTOF;" "[t]he FBI has not publicly confirmed whether or not El Badrawi is included within VGTOF;" and, "the law enforcement techniques and procedures contained in VGTOF have not been disclosed by the FBI."  Cummings Decl. at 16-17.  More importantly, Cummings supports these statements with detailed and specific examples and information.  The court finds the Cummings Declaration persuasive.  Cummings demonstrates, in a clear and thorough manner, the significant harm that would result if members of terrorist organizations were able to confirm whether they are listed in VGTOF.  Further, he explains that the FBI – the agency tasked with maintenance of NCIC records – has never officially confirmed nor denied the existence of any VGTOF files relating to El Badrawi.  Thus, despite El Badrawi's protestations, the FBI has not waived its right to assert a Glomar response as to any such files.  See, e.g., Afshar v. Department of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983) (noting the differences between "unofficial leaks and public surmise" on one hand, and official, "authoritative acknowledgment" on the other).  Consequently, the court concludes that the FBI has properly asserted a Glomar response pursuant to Exemptions 2 and 7(E), because confirming or denying that El Badrawi is a subject of interest in VGTOF would cause the very harm FOIA Exemptions 2 and 7(E) are designed to prevent.  Thus, the FBI has satisfied its FOIA obligations with respect to responsive NCIC records, if any.

Regarding the non-NCIC records withheld in full or in part by the FBI, the FBI

withholds information under Exemptions 1, 2, 3, 5, 6, 7(C), and 7(E).[12] El Badrawi does not contest the FBI's withholdings under Exemptions 6 or 7(C), thus Exemptions 1, 2, 3, 5, and 7(E) are at issue.

The court has reviewed, in camera, all contested documents withheld in full or in part by the FBI, including documents from both FBIHQ and the New Haven Field Office. The court has concluded that all materials not disclosed by the FBI were properly withheld. Information withheld under Exemption 1 was properly classified under E.O. 12598, as amended;[13] material withheld under Exemption 2 relates to agency personnel rules and practices that, if disclosed, would risk circumvention of the law; information withheld under Exemption 3 relates to the issuance or refusal of a visa and is therefore protected under 8 U.S.C. § 1202(f); information withheld under Exemption 5 is protected by the deliberative process privilege; and material withheld under Exemption 7(E) was compiled for law enforcement purposes and its disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions and could reasonably be expected to risk circumvention of the law.

As noted in the September 30 Ruling, however, the FBI has not provided sufficient declarations or Vaughn indices for the non-NCIC records from FBIHQ withheld from El Badrawi. As a result, the FBI shall submit, within 21 days, a supplemental

---

[12] In its initial response to El Badrawi's FOIA request to FBIHQ, the FBI invoked only Exemptions 1, 2, 6, and 7(C). See Declaration of David M. Hardy, attachment 1 to Doc. No. 27, at 2. Then, on September 17, 2008, after the agency located an additional 50 pages of responsive documents at its New Haven field office, it invoked Exemption 7(E). See FBI Letter dated September 17, 2008, exhibit AA to Doc. No. 103, at 1. Finally, in the Second Declaration of David M. Hardy, filed December 11, 2008 (Doc. Nos. 126, 127, 128), the FBI claimed two additional exemptions, Exemptions 3 and 5.

[13] See discussion of proper withholding under Exemption 1 and E.O. 12598, as amended, supra at 7-9.

Vaughn index for those records that addresses the deficiencies noted in the September 30 Ruling at 46-47, or, alternatively, a declaration affirming that no further detail can be provided to the plaintiff without unacceptably compromising the withheld information.

With respect to the 50 pages of documents found at the FBI's New Haven Field Office, on December 11, 2008, the FBI submitted the Second Declaration of David M. Hardy ("Second Hardy Declaration"). This declaration, like the First Hardy Declaration addressed by the September 30 Ruling, fails to give a detailed application of the terms of the exemptions to the specific facts of the records at hand. The 32-page declaration contains a great deal of information regarding the agency's general justification for invoking the relevant FOIA exemptions, but leaves the plaintiff without even the most basic information concerning many of the withheld records. For example, the Second Hardy Declaration states that the FBI's Central Records System is "organized into a numerical sequence of files called FBI 'classifications,' which are broken down according to subject matter. The subject matter of a file may correspond to an individual, organization, company, publication, activity, or foreign intelligence matter (or program)." Second Hardy Declaration at 6. Yet, for the 10 pages withheld in part and the 11 pages withheld in full, the Second Hardy Declaration neither informs El Badrawi of the subject matter of the withheld records nor claims that it is impossible to give such basic information without disclosing exempt material. As a result, the FBI shall submit, within 21 days, a supplemental Vaughn index for the records from the New Haven Field Office that contains "reasonable specificity of detail." Grand Cent. P'ship., Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999). Alternatively, the FBI may file a declaration affirming that no further detail can be provided to the plaintiff without unacceptably

compromising the withheld information.

4. ICE

ICE withholds information responsive to El Badrawi's FOIA request under Exemptions "low2," "high 2," 5, 6, 7(C), 7(D), 7(E), and 7(F). See ICE Memorandum in Support of Summary Judgment, Doc. No. 40, at 2. El Badrawi does not contest ICE's withholdings under Exemptions "low 2," 6, or 7(C). Thus, Exemptions 5, 7(D), 7(E), and 7(F) are at issue. The court addressed ICE's withholdings under Exemptions 5, 7(D), 7(E), and 7(F) at length in the September 30 Ruling, and noted a number of deficiencies in ICE's Vaughn affidavits and legal reasoning.[14] See September 30 Ruling at 47-54. Consequently, the court ordered ICE to submit all contested documents withheld from El Badrawi in full or in part for in camera review.

The court has carefully reviewed the materials submitted by ICE and has concluded that ICE improperly withheld information from documents 12, 110-113, and 167-176. The court has indicated[15] the portions of these records that do not fall under one of the FOIA exemptions, and ICE is hereby ordered to release this material to El Badrawi within seven days.

With respect to all other records from which ICE withheld information, the court has concluded that that information falls under one of the statutory exemptions to

---

[14]It bears noting that, with respect to Exemption 5, El Badrawi does not contest ICE's withholdings under the attorney-client privilege, but does contest its withholdings under the attorney work product doctrine and the deliberative process privilege. In order to properly assess the withholdings under these exemptions, the court ordered ICE to submit a supplemental affidavit confirming that the legal analysis, strategy, and deliberations redacted from the applicable records had not been adopted or incorporated into ICE policy. ICE did so on October 6, 2008. See Doc. No. 110.

[15]See process described in footnote 5, supra.

FOIA's general disclosure requirement, and therefore was properly withheld. As noted in the September 30 Ruling, however, ICE's Vaughn indices are not sufficient. Therefore, ICE shall, within 21 days, submit a supplemental Vaughn index that addresses the deficiencies laid out in the September 30 Ruling at 47-54.[16]

5. CIS

CIS withholds information under Exemptions 2, 5, 6, 7(C), and 7(E). El Badrawi does not contest CIS's withholdings under Exemptions "low 2," 6, and 7(C). Thus, Exemptions "high 2", 5, and 7(E) are at issue.

After reviewing, in camera, all contested material CIS withheld from El Badrawi in full or in part, the court has concluded that CIS improperly withheld information from documents 67, 111, 123-125, 129-131, 134-142, and 149-154. The court has highlighted the portions of these records that do not fall under one of the FOIA exemptions, and CIS is hereby ordered to disclose this material to El Badrawi within seven days.

The court has further concluded that the remainder of the material CIS withheld from El Badrawi falls within one of the invoked exemptions, and therefore this material was properly withheld. As noted in the September 30 Ruling, however, CIS's Vaughn indices are insufficient. Therefore, CIS shall, within 21 days, submit a supplemental

---

[16] As discussed in the September 30 Ruling, the original Vaughn affidavit submitted by ICE was filled with boilerplate language, word-for-word recitations of the FOIA statute, vague and conclusory statements, and cryptic warnings. Of all the agency affidavits and Vaughn indices submitted in this case, ICE's original Vaughn affidavit provides the least information regarding the propriety of the claimed exemptions. Based on the other agency filings in this case, the court expects that ICE is able to give much greater detail than it has provided to date. Consequently, it is the court's view that a declaration affirming that no further detail can be provided to the plaintiff without unacceptably compromising the withheld information is not appropriate for ICE.

Vaughn index that addresses the deficiencies laid out in the September 30 Ruling at 54-55, or, alternatively, submit a declaration affirming that no further detail can be provided to the plaintiff without unacceptably compromising the withheld information.

## IV. ADEQUACY OF SEARCHES AND SEGREGABILITY DETERMINATIONS

### 1. Adequacy of Agency Searches

In their Motions for Summary Judgment, the agencies moved for summary judgment as to the adequacy of the searches they undertook in response to El Badrawi's FOIA requests. For the reasons stated in the September 30 Ruling, the court denied summary judgment as to the adequacy of the agencies' searches and granted El Badrawi's request for limited discovery on that issue. See September 30 Ruling at 13-34. Based on the representations of El Badrawi's counsel at oral argument on the agencies' Motions, the court expects that, once discovery has been completed, the parties will attempt to reach a stipulation as to the adequacy of the searches. If the parties agree to a stipulation, such stipulation shall filed with the court as soon as practicable. At the latest, counsel shall file a report by January 31, 2009, as to the status of this discovery and efforts to stipulate.

### 2. Segregability Determinations

In their Motions for Summary Judgment, the agencies also moved for summary judgment as to the reasonableness of their segregability determinations. As the September 30 Ruling notes, given the inadequacy of the declarations and Vaughn affidavits submitted by the agencies with their Motions for Summary Judgment, it was impossible, at that time, for the court to determine whether the agencies had, within each responsive record, reasonably segregated exempt material from non-exempt

17

material.  See September 30 Ruling at 55-57.  Therefore, the court denied the agencies' Motions for Summary Judgment as to the reasonableness of their segregability determinations.  Id.

The court has now reviewed all documents withheld in full or in part, and has found numerous documents in which the agencies failed to segregate exempt material from non-exempt material.  The court has, as previously discussed, marked the non-exempt material for disclosure by the agencies, thereby, in effect, making the segregability determinations itself.  Consequently, once the material indicated by the court has been disclosed, the agencies will have fulfilled their statutory obligation to reasonably segregate exempt material from non-exempt material.

## V.  PLAINTIFF'S COUNSEL ACCESS TO CLASSIFIED AFFIDAVITS

On September 12, 2008, DOS moved to submit ex parte and in camera a classified Declaration concerning the two documents it had referred to an unnamed agency.  See Doc. No. 89.  El Badrawi opposed the ex parte nature of this Motion, arguing that because one of his counsel, Attorney Ramzi Kassem, holds a "Top Secret" security clearance and has signed the requisite non-disclosure agreements, ex parte filing of the Declaration was not necessary. See Doc. No. 93.  In an Order dated September 24, 2008, the court found that the only issue in dispute concerning Attorney Kassem's access to the classified Declaration was whether Attorney Kassem had a "need to know" the information contained in that Declaration. See Doc. No. 102.  Further, the court held that it could not rule on whether Attorney Kassem had a "need to know" without first reviewing the Declaration in question.  The court subsequently

reviewed the classified DOS Declaration, and it has concluded that Attorney Kassem does not need to know the information contained therein.

As discussed above, the court eventually reviewed, in camera, the two documents DOS referred to an unnamed agency. Based on the review of the documents themselves – to which El Badrawi never requested access for Attorney Kassem[17] – the court concluded that the documents were properly classified, and thus properly withheld under Exemption 1. Because the court reviewed the documents themselves, it did not rely on the classified DOS Declaration in making this determination. As a result, the court did not require Attorney Kassem's aid in determining whether the documents were properly withheld, and the ex parte filing of the Declaration did not hinder the adversarial process.

## VII. CONCLUSION

For the reasons stated herein, defendants CBP, ICE, and CIS are **ORDERED** to disclose to plaintiff, within seven days, all non-exempt material as indicated by the court. Further, defendants DOS, FBI, ICE, and CIS are **ORDERED** to submit, within 21 days, supplemental Vaughn indices that describe, with reasonable specificity of detail, why the documents indicated herein are properly withheld, or, where appropriate, a declaration affirming that no further detail can be provided to the plaintiff without unacceptably compromising the withheld information.

---

[17] See Plaintiff's Response to DOS's Request to File Classified Ex Parte Declaration, Doc. No. 98, at 2 (stating, "Mr. El Badrawi does not request that Attorney Kassem have access to the records at issue in his FOIA suit; he only requests that the Court issue an order granting his request for Attorney Kassem, who has the requisite security clearance and in numerous other cases has reviewed classified records without incident, to have access to the Declaration . . .").

**SO ORDERED.**

    Dated at Bridgeport, Connecticut this 13th day of January, 2009.


                                    /s/ Janet C. Hall  
                                    Janet C. Hall  
                                    United States District Judge